J. WALLWORTH'S SONS, INC. *vs.* DANIEL E. CUMMINGS COMPANY.

Somerset.      Opinion, November 5, 1937.

*Bernard Gibbs*, for plaintiff.
*James H. Thorne*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J.    This case is before us on report. It is an action on an account annexed to recover the purchase price of a waste

machine alleged by the plaintiff to have been sold by it to the defendant.

It is conceded that this is a proper form of action to recover the purchase price of personal property the title to which has passed to the buyer. *Smith, Fitzmaurice Co.* v. *Harris,* 126 Me., 308, 138 A., 389. The sole question before us is, had title passed. If it had not, this action can not be maintained.

March 8, 1935, the defendant wrote asking the plaintiff if it had a waste machine for sale. The plaintiff replied to this letter stating that it did have such a machine at a price of $1000, "f. o. b. cars Chester, Penna., and on terms of net cash." Through further correspondence the defendant was given on the payment of $50 an option on this till April 10, 1935. About April 8th, Willard H. Cummings, representing the defendant, visited the plant of the plaintiff, examined the machine, and agreed to take it at the price named. This agreement was confirmed by the plaintiff in writing, and an invoice of the machine to be shipped later was sent. This set forth the terms of the sale and contained the notation "F. O. B. Cars, Chester, Pa. Terms Net." During the conversation between Mr. Cummings, and Mr. Wallworth representing the plaintiff, it was agreed that the plaintiff might use the machine for sixty or ninety days. Mr. Wallworth's testimony on this point is as follows:

"Q. Now what further did Mr. Cummings say about the machine?

"A. The only further conversation was with reference to the shipping date, because we had the machine in operation in our own plant, and it wasn't possible for us to make an immediate shipment of it.

"Q. Yes.

"A. And we explained to him at that time that it wouldn't be possible for us to ship the machine for possibly sixty or ninety days."

On April 29, 1935, the defendant wrote to the plaintiff saying that a check would be sent when the plaintiff was ready with the machine, but that there was no hurry. Nothing further happened

until February 12, 1936, when the plaintiff wrote the defendant asking for shipping instructions. The defendant replied to this letter stating that it did not wish the machine, and that it would forfeit the $50 which had been advanced for the option. A demand was then made by the plaintiff for the balance of the price, and, on the failure of the defendant to pay, this action was brought.

The question whether a sale has been completed and title to the property involved has passed depends on the intention of the parties at the time the contract was made. *Bethel Steam Mill Co.* v. *Brown et al.*, 57 Me., 9; *Russell* v. *Clark*, 112 Me., 160, 91 A., 602; *American Thread Company* v. *Milo Water Company*, 128 Me., 218, 146 A., 695; R. S. 1930, Chap. 165, Sec. 18. Where such intent is not expressed, as in the instant case, it must be discovered from the surrounding circumstances and from the conduct and the declarations of the parties. Under the terms of the Uniform Sales Act, which is in force in Pennsylvania as well as in Maine, certain rules are laid down for ascertaining such intention. Those which have a bearing on the present problem read as follows, R. S. 1930, Chap. 165, Sec. 19:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

"Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done.

\* \* \*

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The plaintiff contends that there was here an unconditional contract to sell specific goods, in a deliverable state, and that the

title passed to the buyer on April 10, 1935, when the plaintiff wrote to the defendant confirming the sale. The fact, however, that the plaintiff was to use the machine for several months as if it were its own militates strongly against the contention that title passed immediately. Could it have been the intention of the parties that under these circumstances the risk of damage from fire or other casualty was on the defendant? Was it not the duty of the plaintiff after it had finished with the machine to see that it was placed in good working order? Was it not likewise contemplated by the parties that the machine should be delivered to the carrier before the defendant should be charged with the obligations of an owner?

Like many cases of this kind where the intention must be gleaned from correspondence and from the surrounding circumstances, evidence can be found supporting the contention of either party. On the whole, however, we are satisfied that the parties intended that this contract should remain executory until delivery of the machine to the carrier had been made. This conclusion is in accord with the provisions of Rule 5 of the Uniform Sales Act, *supra*.

*Judgment for the defendant.*