CHATHAM, et al. *v.* ALL AMERICAN SALES, Inc.

Division A. Jan. 14, 1952.

No. 38183 (56 So. (2d) 42).

**Vollor, Teller & Biedenharn,** for appellants.

Dabney & Dabney, for appellee.

## Kyle, J.

All American Sales, Inc., an Illinois Corporation, as plaintiff, filed suit in the County Court of Warren County against R. P. Chatham, Jr., and H. D. Kinnebrew, doing business as Chatham-Kinnebrew Service Company, defendants, for the sum of $1,305.15 alleged to be due to the plaintiff as damages for failure to accept 18 Thor Automagic washers, which had been shipped to the defendants by the plaintiff as a part of a purchase order for 40 Thor Automagic washers given to the plaintiff several weeks prior to the date of said shipment. The defendants had declined to accept said machines because the factory serial numbers and the manufacturer's guarantee bond had been removed therefrom prior to the shipment of the machines to the defendants. The case was tried in the county court before a jury, and a verdict was returned for the defendants. Judgment was entered in favor of the defendants, and plaintiff's motion for a new trial was

overruled. The plaintiff thereupon appealed the case to the circuit court, and upon the hearing of the appeal the circuit court reversed the judgment of the county court and rendered judgment for the plaintiff. From that judgment the defendants prosecute this appeal.

Sam Stamler, President of the All American Sales, Inc., testified in answer to interrogatories propounded to him that the plaintiff received an order from the defendants on September 10, 1947 for 40 Thor Automagic washers which were to be delivered to the defendants at the price of $158 per unit; that the machines were shipped to the defendants during the month of November, 1947 in three separate installments, and that 22 of the machines were accepted and paid for by the defendants, but the last 18 were rejected and were returned to the plaintiff after the defendants had refused to accept the same; and that the defendants had refused to pay for the machines thus rejected. Stamler testified further that the 18 machines, which the defendants had refused to accept, were later sold on the open market in Chicago for the sum of $1,791, which represented a loss to the plaintiff of approximately $60 per unit on the machines thus rejected.

Stamler admitted that the factory serial numbers and the manufacturer's guarantee certificates had been removed from the machines prior to the shipments of same to the defendant; but Stamler stated that he had discussed this matter with Chatham on the telephone at the time Chatham placed the order for the 40 Automagic washers, and that Chatham understood that there would be no serial numbers or guarantee certificates on the machines. Stamler stated further that the machines were shipped to the defendants in the same condition as they were in when the plaintiff received them.

Roger P. Chatham, Jr., testified that the order for the 40 Automagic washers was placed with the plaintiff by telephone call on August 11, 1947; that Sam Stamler, the president of the plaintiff corporation, stated to him at that time that he had the machines in stock and would

ship the same promptly; that on September 9, Stamler called Chatham and asked for a deposit of $300 on the machines, and that on September 12, 1947, Stamler called him again and asked for an additional deposit of $2,000. These amounts were forwarded to the plaintiff immediately. Chatham testified further that he had a telephone conversation with Stamler on October 14, 1947, and learned at that time that the plaintiff did not have the machines in stock. He then asked that the money which he had deposited with the plaintiff be returned to him. Stamler refused to return the deposit but agreed to ship other merchandise to the defendants which was to be charged against the deposit, and other merchandise of the value of $1,056, was shipped to the defendant during the month of October.

Chatham testified that on November 7 the defendants received a shipment of seven Thor Automagic washers at the railroad depot in Vicksburg. The machines had been shipped under a bill of lading with sight draft attached. Chatham paid the draft and the machines were delivered to him. He found that the factory serial numbers and manufacturer's guarantee certificates had been removed from the machines. He stated that he had had no prior knowledge that the plaintiff intended to ship to him machines from which the factory serial numbers and the manufacturer's guarantee certificates had been removed. He stated that he had bought merchandise from the plaintiff on prior occasions, and that such serial numbers and guarantee certificates had never been removed from any other merchandise. Chatham stated that he called Stamler on the telephone and told him that he could not accept any more machines in that condition, and asked Stamler to return to him the balance of the money which he had on deposit with the plaintiff. Stamler refused to agree to return the money which the defendants had on deposit; and Stamler stated to Chatham that the remaining 33 machines called for in the order had been shipped.

Chatham testified that the other machines arrived in Vicksburg on November 10. One shipment contained 15 Thor Automagic washers and the other shipment contained 18 Thor Automagic washers. Chatham made an inspection of the machines at the railroad depot in Vicksburg and found that the factory serial numbers and the guarantee certificates had been removed from them. Chatham accepted the shipment of 15 machines, and stated as his reason for doing so that the plaintiffs still held about $1,244 of the defendants' money, which had been placed on deposit with the plaintiff in September, and that he thought that was the only way the defendants could protect themselves on the deposit. Chatham rejected the other shipment of 18 machines. Chatham testified that the defendants sold the machines which they had accepted at a reduced price.

A copy of the Thor guarantee bond, which ordinarily accompanied each machine, was offered in evidence as an exhibit to Chatham's testimony. Under the terms of the guarantee agreement the factory agreed to replace defective parts which might be returned to the factory within the period of one year from the date of the sale to the retail purchaser. And it was expressly provided in the guarantee bond that the guarantee should not apply to any Thor Automagic household appliance, if the serial number thereon had been altered, defaced or removed; and the guarantee bond required that the enclosed registration card be properly filled in at the time of the original sale and promptly returned to the Thor factory. Chatham testified that without such guarantee certificate the factory would not be liable for the replacement of defective parts, and that in cases where sales were made without such guarantee certificate the retail dealer would be required to assume responsibility for the replacement of defective parts.

The only material conflict in the testimony was that Stamler testified that the matter of the removal of the factory serial numbers and the factory guarantee certifi-

cates from the machines was discussed by him with Chatham in the telephone conversation which they had at the time when the order for the machines was placed, and that Chatham understood that there would be no factory serial numbers or guarantee certificates on the machines when they were shipped. Chatham denied this, and stated that he had no knowledge that the serial numbers and guarantee certificates had been removed from the machines, or were to be removed from the machines, which he proposed to purchase. This issue of fact was settled by the verdict of the jury in favor of the defendants. And it is clear from the record that the removal of the factory serial numbers and the guarantee certificates from the machines prior to the delivery of the machines to the purchasers affected materially the value of the machines and their salability on the retail market. The defendants sold the machines which they accepted at a loss, and the plaintiff sold the machines which were returned to it at a loss; and this notwithstanding the fact that there was a brisk demand for Thor Automagic washers among retail dealers at that time.

It is clear that the learned circuit judge was of the opinion that the contract to purchase the 40 machines was an entire or indivisible contract, and that since the defendants had accepted a part of the machines, notwithstanding the fact that the factory serial numbers and the factory guarantee certificates had been removed from them, the defendants could not refuse to accept the others. ▮▮ ▮ If all of the washers had been shipped at one time and under one bill of lading, we would be inclined to hold, under the rule laid down in the case of Kanson Hat & Cap Mfg. Co. v. J. D. Blakeney & Son, 142 Miss. 851, 108 So. 139, and in the case of S. P. Nelson & Sons v. Wilkins & Parks, 151 Miss. 492, 118 So. 436, that the contract was an entire contract and not divisible. That in fact seems to have been the intention of the parties at the time the order was placed for the machines. But the parties themselves, after the order had been given

and accepted, treated the contract as divisible. The machines were shipped by the plaintiff in three separate installments, and separate bills of lading were issued for each installment, and separate drafts were drawn by the plaintiff for the purchase price of the machines included in each installment. The first installment was received by the defendants and paid for on November 7; the second installment was received and paid for a few days later; and the third installment was rejected and was returned by the carrier to the plaintiff. Since the contract was treated by both parties as divisible, the appellee is in no position now to contend that the contract was an entire contract and not severable, and that the appellants by accepting the first installment were thereby precluded from refusing to accept the other installments.

"Even if the contract would not ordinarily be deemed severable, the parties may by their conduct so treat it as to show that they regarded it as severable in fact. And where the delivery is to be in installments, the fact that the buyer has accepted one installment will not preclude him from refusing to accept a second installment which in fact does not conform to the contract." Mechem on Sales, Vol. II, p. 1215, par. 1398.

In the case of B. R. C. Bottle Co. v. Peaslee-Gaulbert Co., 189 Ky. 28, 224 S. W. 468, it was held that when a contract for the sale of merchandise has been considered and treated by both parties as severable, it may be properly so treated by the court. In the case of Brown Bag Filling Mach. Co. v. United Smelting & Aluminum Co., 93 Conn. 670, 107 A. 619, the Court, though of the opinion that the contract was entire, held it divisible, since the parties treated it as divisible.

■■■ It cannot be doubted that the removal of the factory serial numbers and guarantee certificates from the washers prior to the delivery of same to the appellants reduced the value of the machines as articles of merchandise and imposed an additional burden upon the retail dealers, who undertook to sell the same to their

customers. The machines thus delivered to the appellants were defective in quality, and the appellant had a right to reject all of the machines. And we do not think that the appellants by accepting the first two installments of the defective machines under the circumstances stated above bound themselves to accept the remaining installment likewise defective in quality.

"In contracts to buy and sell if the buyer receives and accepts some installments of inferior goods, this is not ordinarily equivalent to an assent to receive subsequent installments of similarly inferior goods." Williston on Contracts, Revised Edition, Vol. 3, p. 2103, par. 741.

In 46 Am. Jur., p. 462, Sales, par. 277, the effect of the acceptance of prior installments upon the right of the buyer to complain of defects in the quality of subsequent installments is stated as follows: "The acceptance of installments which comply with the contract in quality does not affect the right to reject subsequent installments which in quality do not meet the requirements of the contract. Moreover the acceptance of prior installments defective in quality does not preclude the buyer from rescinding the contract for the default of the seller in the quality of subsequent installments." In the annotation entitled "Contracts for Sale of Goods as Entire or Divisible" in 2 A. L. R., pp. 643, 662, the annotator says: "The fact that the buyer saw fit to accept an installment of goods in quality inferior to the requirements of the contract does not affect his right to rescind the contract, where subsequent installments are tendered which are likewise of inferior quality."

In United States Printing Co. v. H. O. Wilbur Co., 98 Ill. App. 20, the Court held that a contract for the sale of a designated number of wrappers of a certain brand, to be shipped in installments, is severable in the sense that the acceptance of one installment of poor quality does not bind the buyer to accept the balance of the same quality. In the case of Russell v. Clark, 112 Me.

160, 91 A. 602, the Court held that the purchaser of a quantity of lumber of different dimensions, at designated prices per thousand feet, is entitled to rescind the contract, when the seller tenders, as in compliance therewith, lumber of a poorer grade than the contract permits, although the purchaser had previously received under the contract lumber of this grade.

In the case of Red Star Milling Co. v. Moses, 176 Miss. 634, 169 So. 785, this Court held that acceptance by the buyer of an installment of flour defective in quality was not in itself equivalent to an assent to receive subsequent installments of similarly inferior flour.

For the reasons stated above the judgment of the circuit court reversing the judgment of the county court is reversed by this Court and the judgment of the county court in favor of the defendants is reinstated.

Reversed and judgment rendered for the appellants.