INHABITANTS OF THE TOWN OF MILO *vs.* MILO WATER COMPANY.

Piscataquis.     Opinion December 8, 1932.

*Hiram Gerrish,*
*C. W. & H. M. Hayes,*
*Ryder & Simpson,* for plaintiff.
*McLean, Fogg and Southard,*
*John S. Williams,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.  On report this action of debt for taxes for the year 1928 comes to this court for final judgment, on so much of the evidence as is legally admissible.

No question of the validity of assessment is in issue.

The plea is the general issue, with brief statement.

On May 1, 1909, defendant entered into a contract with the town of Milo to supply the town with pure water for domestic uses, and for protection against fire for the term of twenty years.

By item seven of its contract with the town the defendant company agreed, "to furnish water at the mains so laid for the following purposes, to wit; for filling reservoirs, for flushing sewers, for filling street sprinklers, for the reasonable practice of hose companies at such times and in such amount as shall be deemed necessary by the officers of said town, for the use of all school houses on or adjacent to streets in which pipe is laid or that may hereafter be built along the line of pipe or any extension thereof or adjacent thereto, for the town hall whenever such shall be built, for all other buildings or rooms used by the said town for town purposes exclusively, for all churches and cemeteries situated on or adjacent to streets in which mains may be laid. The supply of water at school houses, town buildings or rooms, churches, and cemeteries to be in each case sufficient for all purposes for which water may there be needed. To furnish, maintain, and supply with water one drinking fountain of modern and approved pattern for the use of man and beast, said fountain to be located by said water committee, and shall be so used as not to cause an unnecessary waste of water at the same, and shall not be regularly used as watering places connected with or incident to barns or stables. The said company will further furnish water for such other drinking fountains as the said town may furnish and erect on its said lines, under the same conditions as the one described to be furnished by the company. The said company further agrees to furnish and erect one stand-pipe or hydrant for the purpose of filling watering carts, and to supply the same with a constant and sufficient supply of water for said purpose."

It was further specified, as part of item fifteen of the contract, "In consideration of the construction and maintenance of said system of water works in accordance with the foregoing agreements, said town hereby agrees to pay to said company, its successors, and assigns, the sum of fifteen hundred dollars per year during said period of twenty years for the use of said forty hydrants as more particularly set out in this contract and for water for the same; *and for water for the purposes specified in Item seven*

*of this contract such further sum each year as shall equal the amount of tax, if any, assessed against said Company by said town of Milo during said year."*

On complaint of defendant Company dated February 23, 1920, and referred to as F. C. ♯277, asking for an increase of rates, a decree was rendered by the Public Utilities Commission on December 31, 1920, increasing rates in all classes of service, and raising each annual hydrant rental rate from $37.50 to $40.00.

On September 30, 1927, on another petition brought by the defendant Company, referred to as F. C. ♯641, a decree was issued by the Public Utilities Commission granting further increase of rates and increasing the hydrant rentals to $60.00 per hydrant. The record of the findings and statements accompanying and leading up to the formal language of the decree in F. C. ♯641, supra, is that "The petitioner presents estimates (Petr. ex. 6) showing a requirement of $12,556.00 (exclusive of taxes) for expenses of operation," and then, after stating that "We have a total requirement of $12,500.00 for operating expenses" the record goes on thus: "We shall assume that the Water Company and the town of Milo will continue to be guided by the terms of the present contract, except as modified by this and former decrees of this Commission." At the time this decree was made the contract was in force except as modified and affected by the decree in F. C. ♯277. The Commission was not considering taxes but realized, and so stated, that, if the time came when the defendant Company was called on to pay taxes, "that would be an element to be figured in the establishing of new rates." This is clearly shown by its statement that "the rates herein provided will probably yield a gross revenue somewhat in excess of the requirements and perhaps sufficient to provide the necessary revenue upon additions to the plant. If, however, the future revenue requirements are increased by reason of necessary additions to plant, municipal tax assessment or otherwise, a readjustment of rates may be made, after further petition and hearing, to meet conditions that may then exist."

The evidence shows that no taxes had been assessed by the town against the defendant Company from the date of the contract to September 30, 1927, the date of the decree in F. C. ♯641.

In 1928 the town did assess a tax against the defendant Com-

pany and, after due demand, this suit, duly ordered, to collect the tax in the name of the Inhabitants of the Town of Milo was brought.

It is argued by defendant that the suit must fail because:

First: In the record of levy of taxes the description of property of defendant is insufficient to support suit for the tax.

Second: Action of the town evidenced by a legal contract controls assessors.

Third: Estoppel is effective against the town.

Fourth: Taxes are subject to recoupment, counter claim or set-off.

As to the first objection, the description of the property taxed is not made as directed by statute. It is not incumbent upon us in this suit to decide whether the irregularities are such as would vitiate title if property taxed were sold by the collector, under the law.

The present suit is for a tax assessed, and in meeting objection to irregularities in such suit, our Court has said:

"This is not a proceeding wherein a forfeiture is sought to be enforced, but a suit at law for the recovery of unpaid taxes. Much greater particularity and precision are required in the former than in the latter; and it has been held that the stringent rules which have been applied in testing the validity of arrests, and sales of property for unpaid taxes, are not applicable where the remedy sought is by an ordinary suit at law to collect unpaid taxes. *Cressey* v. *Parks,* 76 Me., 532; *Rockland* v. *Ulmer,* 84 Me., 503, 24 A., 949; *Rockland* v. *Ulmer,* 87 Me., 357, 32 A., 972. "As was said in *Cressey* v. *Parks,* where the distinction is properly made between collecting taxes by suit and proceedings to enforce a forfeiture: 'To prevent forfeitures strict constructions are not unreasonable. But, where forfeitures are not involved, proceedings for the collection of taxes should be construed practically and liberally.'" *Charleston* v. *Lawry,* 89 Me., 582, 36 A., 1103.

So we hold that under proper construction and application of statutes applicable the record of assessment is sufficient.

The second objection seems to be that if a utility and the town which may tax it are operating under a contract, legal upon its face, and if the assessors of the town have not taxed the utility,

assessors, while the contract longer obtains, may not lawfully tax the utility.

The rates, tolls, and charges specified in the contract were reviewed in 1927 by the Public Utilities Commission, pronounced unreasonable, insufficient and unjustly discriminatory, and a new schedule of rates for all services ordered.

Under the new schedule of rates, certain service of the company, included in item seven of the contract, and by its terms paid for by what amounted to an irregular abatement of taxes annually, were thereafter to be paid by the town, as:

| | |
|---|---|
| Watering trough, each | $30.00 |
| Stand-pipes, street sprinkling purposes, each | $25.00 |

By thus modifying the contract in the matter of amount that the town should pay for public service, in addition to service for fire protection, the Public Utilities Commission relieved the town of obligation longer to refrain from taxing the company, if any such obligation previously existed.

In *Brownville* v. *Shank Company*, 123 Me., 379-382, 123 A., 170, 172, this Court has said, relative to a vote of the plaintiff town, with reference to property of defendant, reading as follows:

"Voted to abate all taxes that may be assessed on all buildings together with all machinery that may be placed therein for manufacturing purposes and also on all buildings for storing manufactured products that may be erected on land owned by the U. S. Pegwood & Shank Co. on the West Shore of Pleasant River for a period of ten (10) years.

"If construed according to the ordinary meaning of the language used, this vote does not grant an exemption from taxation, but an abatement of taxes assessed by an independent body created by law, and charged with the duty of assessing taxes, and authorized to grant reasonable abatements. Assessors are not subject to the direction and control of the municipality; their duties and authority are imposed by law. A town has no power to abate a tax. *Thorndike* v. *Camden*, 82 Me., 39, 46, 19 A., 95; *Rockland* v. *Farnsworth*, 93 Me., 183, 44 A., 681.

"Treating the action of the town as a vote of exemption, as probably intended, it was likewise beyond the power of the town; the

law must be considered in this State as settled to that effect. *Brewer Brick Co.* v. *Brewer,* 62 Me., 62; *Thorndike* v. *Camden,* supra."

So whether action of assessors of Milo in former years be viewed as abatement or exemption, the assessors of Milo for 1928 were not precluded from assessing the tax in question. As we understand the constitutional and statutory provisions specifying the duties of assessors of taxes in like cases it was their duty to tax the company.

Regarding the third objection urged, that estoppel is effective against the assessors, this question has been dealt with in numerous well-considered cases.

Limiting our discussion to the question whether a town can be subject to estoppel in a suit for taxes, where the validity of the assessment is not questioned and no constitutional or statutory bar can be raised, there seems to be a general consensus of opinion in the cases that when the State or a municipality makes itself a party to a contract or to a grant in a business or proprietary capacity it is, in matters relating thereto, subject to the same law of estoppel as other contracting persons who may be parties litigant, but many of the cases so holding recognize the double character of municipal corporations, the one governmental or sovereign, legislative or public, and the other proprietary, business or private. Few cases are to be found bearing directly on the question of whether a municipal corporation, a State or the general government can be estopped, as between it and an individual, to assert its governmental or sovereign power, but some cases by way of dicta appear to recognize the principle that in the strict scope of governmental or public capacity there can be no estoppel. That taxation is a function of government and a basic sovereign right there can be no question. In *Philadelphia Mortgage and Trust Company* v. *City of Omaha,* 63 Neb., 280, 88 N. W., 523, it was held that the doctrine of estoppel in pais could not be invoked against the city in the collection of taxes lawfully assessed. In the case of *Chicago, St. P. M. & O. Ry. Co.* v. *Douglas Co.* (Wis.), 114 N. W., 511, the Court said, "The analogies to be deduced from the other sovereign powers necessary to the existence of the

State, such as the power of eminent domain, the police power, and the power to declare war and make peace (when such last named powers are not by written Constitution vested elsewhere), are all antagonistic to the idea that a State can be subject to an estoppel in the matter of the exercise of its taxing power. — We are constrained to hold that the complaint shows the lands to be subject to taxation, and that there can be no estoppel in pais asserted against the exercise by the State of the taxing power of the State;".

Bearing in mind that local, county and State taxes are all included in one tax, it is clear that in this State the town is the State for the purpose of collecting such taxes. In full realization of the fact that few cases can be found bearing squarely on the point, we are nevertheless of the opinion that an equitable estoppel does not lie against a town in the exercise of its taxing power, which necessarily included the power of collecting taxes lawfully assessed. To hold otherwise would, we believe, be contrary to sound public policy and destructive of a fundamental sovereign right.

Furthermore, the facts relied on to establish an equitable estoppel must be such as to have caused the party asserting them to have changed his position in reliance thereon and to his injury. *Forsyth* v. *Day et al*, 46 Me., 176, 197; *Allum* v. *Perry*, 68 Me., 232, 234; *Nichols* v. *Baker*, 75 Me., 334, 344; *Horton* v. *Wright*, 113 Me., 439, 94 A., 883.

The town had no power to exempt the defendant from taxes (*Brewer Brick Co.* v. *Brewer*, supra), and in its contract it did not attempt to so exempt but undertook only to make annual payments for certain services of an amount which might be assessed for taxes each year. But assuming that the town did or said something that led the Public Utilities Commission and the defendant to believe that the "terms" of the contract would be followed, this Court is unable to see where the defendant Company changed its position to its detriment. Its argument is based on the existence of the contract and on its claim that the plaintiff town recognized its existence and its obligation under it down to and including the time of the decree of 1927. What the town did for the first time, in 1928, when it assessed and demanded payment of a tax was a pos-

sibility under the contract from the day on which it was made, assuming that the contract was all the time in force. We are unable to. see where the essential element of change of position or detriment due to that change has been shown, and failure to show that is at all times a complete answer to the claims of estoppel. As to whether or not, if in 1928, the contract was still in force, and if it is now still in force and payment for certain services as provided therein has not been made to the defendant Company and a breach of its terms can be shown, the defendant can recover in a suit for such breach, we do not feel it necessary to consider or decide at this time.

Lastly, it would seem that recoupment, counter claim or set-off is not available to defendant. Recoupment as such relates to damages arising out of breach of the same contract or transaction as that sued on. *The Ruggles Lightning Rod Co.* v. *Ayer,* 124 Me., 17, 19, 125 A., 144; *Fletcher* v. *Harmon et al,* 78 Me., 465, 469, 7 A., 271; *Gilchrist et al* v. *Partridge et al,* 73 Me., 214, 216; *Winthrop Savings Bank* v. *Jackson,* 67 Me., 570, 572; *Jones et al* v. *Vinal Haven Steamboat Co.,* 90 Me., 120, 121, 37 A., 879. There is clearly no basis for recoupment as such in a suit for taxes.

And the rule, based on the ground of public policy, seems sound that no set-off or counter claim is admissible against demands for taxes levied for local governmental purpose, 24 R. C. L., Sec. 23; 26 R. C. L., Sec. 337; *City of New Orleans* v. *Davidson,* 30 La. Ann., 541, 31 Amer. Rep., 228; *Gatling* v. *Commrs. of Carteret Co.,* 92 N. C., 536, 53 Am. Rep., 432; *Tarver* v. *Mayor, etc., City of Dalton* (Ga.), 67 S. E., 929, 56 L. R. A., 922; 33 L. R. A. (N. S.), 382.

It is argued, with persuasive force, that the company having petitioned the Public Utilities Commission for increased rates because of the alleged assessment of the tax now sued for, having been met with the contention that if, as defendant contends, the contract was still in force, the company had a remedy by suit on the contract, and having obtained from the Commission a decree imposing on the town, by increasing the rates charged the town for hydrants "the entire burden of the additional revenue made necessary by the tax assessment," and allocating "to the municipal hy-

drants . . . the entire additional revenue" required by the imposition of the tax, it is precluded by the decree of the Commission from denying the validity of the tax assessment on which such decree was founded; that having, on its own petition obtained an increase in rates with which to meet this very tax, it cannot now be heard to say that the assessment of that tax was invalid.

Judgment should be entered up for plaintiff for the amount of the tax, and interest as voted by the town.

*So ordered.*