STATE OF MAINE
*vs.*
ROBERT JACKMAN BEAN

Kennebec.    Opinion, November 21, 1963.

*Courtland D. Perry,* Ass't. Atty. Gen., for plaintiff.

*Thomas E. Needham* and *John H. Needham,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WEBBER, J. On report. The defendant was committed to the Augusta State Hospital on September 21, 1949 by order of court after he had been found not guilty of the commission of a crime by reason of insanity. On April 25, 1950 a guardian was appointed for the defendant and in the following month the regular payment of benefits to the guardian was commenced by the Veterans' Administration of the United States. Until December 11, 1959 no bills for board and care of the defendant were submitted by the Hospital and no payments were made by the guardian. Under date of December 11, 1959 the Business Manager of the Hospital wrote to the guardian the following letter:

"Dear Madam: ROBERT BEAN

In accordance with an opinion written by the Attorney General's Department, November 6 of this year, this hospital may make charges for persons committed to the hospital as a result of prosecution for a criminal offense wherever means of payment exists. We will start charges as of December 1 for board and care at $14.00 per week."

On January 13, 1960 the guardian paid the amount due for the period from December 1, 1959 through January 31, 1960. On January 20, 1960 a bill was sent to the guardian for board and care from September 21, 1949 through December 31, 1959 in the amount of $6651.72. The fixed maximum rate changed on November 1, 1953 from $10.00 per week to $2.00 per day. As of April 26, 1962 the estate of the defendant in the hands of the guardian, all derived from veteran's benefits and the accrued income thereon, amounted to $13,291.70 and at all material times exceeded the charges alleged by plaintiff to have then accrued. On October 26, 1962 the plaintiff brought its complaint seeking

to recover the sum of $6589.72 to December 1, 1959. The defendant by answer denied liability and specifically asserted by way of defense

1. That the only assets of the defendant are funds derived from the Veterans' Administration claimed as exempt from the claims of creditors.

2. That the claim of the plaintiff for support furnished prior to December 1, 1959 was expressly waived by the letter of December 11, 1959.

3. That the plaintiff is estopped to press its claim by delay and laches.

Later by leave of court the defendant filed his counterclaim noting payments made by the guardian in 1962 of $1744 and claiming that these payments with the payment made in 1960 resulted in an overpayment of $558.

In response the plaintiff filed its answer and compulsory counterclaim by which the plaintiff asserted that after allowance for all proper credits, the defendant yet owed the sum of $262 for the period from December 1, 1959 through October 31, 1962. The parties have agreed that if the plaintiff can recover for board and care furnished prior to December 1, 1959 the correct amount therefor is $6279.12 to which might be added the agreed sum of $262 for the period through October 31, 1962. The plaintiff waives any claim to interest.

The statute providing for payment to the State for such board and care in the form as it existed prior to September 16, 1961 was on that date, the defendant contends, effectively repealed. It is agreed that if this be so and as a result the defendant has overpaid, the amount of such overpayment is $560 to which may be added interest.

To the issues specifically raised by the defendant by answer as above noted must be added two others: (a) Whether

or not the effect of the enactment of P. L. 1961, Ch. 304 was to terminate any liability of the defendant for board and care furnished prior thereto; and (b) Whether or not the counterclaim filed by the defendant constitutes an action from which the sovereign is immune.

## Issue I

Has the State waived its claim to reimbursement or is it estopped by delay and laches to prosecute its claim? The claim is in the nature of an account for goods and services rendered. The defendant frankly concedes that the Statute of Limitations could not be successfully raised in defense in this case against the sovereign. If the defendant relies upon laches, that defense is available only where the action is brought to enforce an equitable claim or right. In the instant case the claim is not of that nature. Even if that were not so, the defendant would still be precluded by the fact that the State of Maine is in the exercise of its police power in institutionalizing the criminally insane and furnishing them with board and care. While thus engaged in a governmental function, the sovereign is not vulnerable to a charge of laches. In *State* v. *Josefsberg,* (1957) 275 Wis. 142, 81 N. W. (2nd) 735, 741, the court was satisfied that the great weight of authority supports this view. See cases noted under 19 Am. Jur. 342, Sec. 495 and 30 C. J. S. 526, Sec. 114.

If the defendant relies upon the doctrine of equitable estoppel, the facts disclose no change of position on the part of the defendant. "Furthermore, the facts relied on to establish an equitable estoppel must be such as to have caused the party asserting them to have changed his position in reliance thereon and to his injury." *Town of Milo* v. *Water Company,* 131 Me. 372, 379. Moreover the defense of equitable estoppel is not available against the State

when it is engaged in the exercise of sovereign powers.  See *Town of Milo* v. *Water Company, supra.*

We are satisfied that the Business Manager was without authority to waive any portion of the claim in the discharge of his public duty and if the letter of December 11, 1959 may fairly be construed as an attempted waiver of any sums legally collectible, it may not be given that effect.

## Issue II

Title 38, United States Code, Sec. 3101 provides in part: "Payments of benefits due or to become due under any law administered by the Veterans' Administration * * * shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary, * * *."

In a well reasoned opinion the Wisconsin court determined that a state furnishing care and maintenance to the veteran in a state mental institution is not a "creditor" within the meaning of Sec. 3101.  The court noted that in *Lawrence* v. *Shaw* (1937), 300 U. S. 245, 250, 57 S. Ct. 443, 445 the Supreme Court had declared that such payments are intended primarily for the maintenance and support of the veteran.  The Wisconsin court was satisfied that "in view of the long history of state court decisions permitting reimbursement by states in situations like that in this case," the failure of Congress to make any substantial change in the law indicated tacit approval of the construction placed thereon by such decisions.  *In Re Bemowski's Guardianship,* (1958) 3 Wis. (2nd) 133, 88 N. W. (2nd) 22.  Reaching a like result upon the same reasoning *Savoid* v. *District of Columbia,* (1961) 288 F. (2nd) 851, 110 U. S. App. D. C. 39; *Auditor General* v. *Olezniczak,* (1942) 302 Mich. 336, 4 N. W. (2nd) 679, 681.

460

It becomes unnecessary, therefore, to consider whether or not upon the record in this case the exemption would not be lost because the funds have been invested to produce income. See *Hale* v. *Gravallese*, (2 cases) (1959) 162 N. E. (2nd) (Mass.) 817 and (1960) 166 N. E. (2nd) (Mass.) 557.

## Issue III

With respect to the care and maintenance of the criminally insane lodged at a state hospital, R. S. Ch. 27, Sec. 121 provided: "The person so committed shall be there supported at his own expense, if he has sufficient means; otherwise, at the expense of the state." This section was expressly repealed by P. L. 1961, Ch. 304, Sec. 17. With respect to insane patients generally, R. S. Ch. 27, Sec. 139 provided: "The state may recover from the insane, if able, or from persons legally liable for his support, the reasonable expenses of his support in either insane hospital." This section was expressly repealed by P. L. 1961, Ch. 304, Sec. 26. By P. L. 1961, Ch. 304, Secs. 4 and 5, the Legislature simultaneously enacted amendments which in the case of Sec. 4 thereof charged the Department of Mental Health and Corrections with the duty of determining the ability of the patient to pay for his support and of establishing rates and fees therefor, and in the case of Sec. 5 provided: "Such fees charged shall be a debt of the patient or any person legally liable for his support, * * *."

The defendant vigorously contends that the repeal effectively destroyed the prior existing right to reimbursement by the plaintiff, no action therefor then having been instituted. Our attention is directed to R. S. Ch. 10, Sec. 21 which provides in part: "Actions pending at the time of the * * * repeal of an act are not affected thereby." In effect defendant urges that this language is exclusive and unless an action is pending at the time of repeal, all claims

which arose under the repealed statute are destroyed. No such effect has heretofore been given to the statute. Although the same language was in effect in 1878 (R. S. 1871, Ch. 1, Sec. 3) the court in *Maine* v. *Waterville Savings Bank,* 68 Me. 515, determined that an assessment due the state under a statute subsequently repealed before any action was instituted for collection was recoverable. The court deemed that the right of the state to collect the debt owed to it was "vested" and unaffected by the repeal. The court said at page 519: "The act of 1877 (which contained the repealing clause) is a consolidation of previous laws relating to savings banks. Such a law, being prospective in its operation, cannot affect acquired rights. It cannot be imagined that it was the intention of the legislature to surrender uncollected dues. * * * It matters not whether it be a revision of statutes or a condensation of statutes on a particular subject. As a question of intention, it cannot be supposed that the legislature intended to annul existing assessments by the very act by which the same assessments were continued." So in the instant case P. L. 1961, Ch. 304 was intended to be a revision and condensation of the statutes relating to the Department of Mental Health and Corrections by which the substance of the right of the State of Maine to reimbursement for care and support from the criminally insane in accordance with "means" or "ability" to pay remained undisturbed. We are satisfied that it was the intention of the Legislature that there should be no moment when the right to such reimbursement did not exist. We think the governing principle was well stated in 50 Am. Jur. 559, Sec. 555:

> "It is a general rule of law that where a statute is repealed and all, or some, of its provisions are at the same time re-enacted, the re-enactment is considered a reaffirmance of the old law, and a neutralization of the repeal, so that the provisions of the repealed act which are thus re-enacted continue in force without interruption, and all rights

and liabilities incurred thereunder are preserved and may be enforced. Similarly, the rule of construction applicable to acts which revise and consolidate other acts is, that when the revised and consolidated act re-enacts in the same or substantially the same terms the provisions of the act or acts so revised and consolidated, the revision and consolidation shall be taken to be a continuation of the former act or acts, although the former act or acts may be expressly repealed by the revised and consolidated act; and all rights and liabilities under the former act or acts are preserved and may be enforced."

We are satisfied that, the right of the State to reimbursement having accrued and vested prior to the repeal, revision and condensation, and the substance of the right having been preserved by the provisions simultaneously enacted, the State is not precluded from recovery by the effect of the repeal.

We conclude that the plaintiff is entitled to recover for the period commencing with the appointment of the guardian the stipulated sums due upon its complaint and upon its compulsory counterclaim. It therefore becomes unnecessary to consider the defense raised to the defendant's counterclaim, there being no factual overpayment.

*Remanded for entry of judgment for the plaintiff for $6279.12 upon its complaint and for $262 upon its counterclaim, with costs but without interest, and for the entry of judgment for plaintiff on defendant's counterclaim. So ordered.*