A. H. BENOIT & COMPANY
*vs.*
ERNEST H. JOHNSON
STATE TAX ASSESSOR

Cumberland.   Opinion, July 1, 1964.

*Malcolm S. Stevenson,* for Plaintiff.

*Ralph W. Farris, Sr.,*
*Jon R. Doyle, Sr., Asst. Attys. Gen.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SULLIVAN, J.   This case is reported to this court by agreement of the parties for such final decision as the rights of the parties may require.   M. R. C. P., Rule 72.

The facts are stipulated as follows:

"1. A. H. Benoit & Company (hereafter referred to as Benoit's), is a retail store in Portland, Maine, which sells, inter alia, clothing for women and children. In its advertising the store sets forth a sales price for each article of clothing. When clothing is purchased in the store one sales slip is used for the purchase of an article or articles of clothing. A separate sales slip is utilized for any alteration to be made in articles of clothing purchased in the store. At the time the clothing is purchased a sales slip recording the price and sales tax is given to the customer. In the case of charge sales a copy of the sales slip is sent to the store accounting office for billing. The same is true with any sales slip involved for alterations.

"The area and personnel involved in making alterations in articles of clothing constitute a separate department in Benoit's store. The employees, performing this work are Benoit employees. Charges for alterations are based on a scale according to the functions to be performed but are generally standard for the geographic areas in which the Benoit's store operates. Generally speaking Benoit does not offer these services to the general public. While the clothing which is being altered is in Benoit's possession the risk of loss is upon Benoit's.

"The customer, with the exception of choosing the clothing, relies upon Benoit's for the accuracy of measurements, fit, etc. when they are requested. Benoit's guarantees the fit of altered article to the customer's satisfaction. The customer has the right to refuse to accept the altered clothing if it is in her opinion not satisfactory; if this occurs any monies paid will be refunded.

"2. On September 26, 1963, the State of Maine, Bureau of Taxation, made an assessment of sales tax against A. H. Benoit & Company for $267.30, which assessment covered the period September 1, 1961 to June 30, 1963. The above tax is attributable to charges for alterations made by Benoit's.

"3. On October 11, 1963, A. H. Benoit & Company petitioned the State of Maine, Bureau of Taxation, for reconsideration of said assessment.

"4. On November 18, 1963, a hearing was held on said petition before Ernest H. Johnson, State Tax Assessor.

"5. On December 27, 1963, the assessment was reconsidered by the State Tax Assessor and found to be correct.

"6. On January 21, 1964, A. H. Benoit and Company appealed from the decision on reconsideration to the Cumberland County Superior Court in accordance with section 33 of Chapter 17, R. S. of Maine, of 1954, as amended, and in accordance with Rule 80-B of Maine Rules of Civil Procedure."

The following are the issues stipulated by these parties:

"1. Whether charges for alterations of clothing whether separately stated or not, are to be considered part of the taxable sales price, as services that are a part of a sale.

"2. Does the failure, by the State of Maine, Bureau of Taxation, to assess sales taxes against A. H. Benoit & Co., in regards to alteration charges, from the effective date of the Maine Sales and Use Tax Law until September 26, 1963, constitute laches or waiver."

The Sales and Use Tax, R. S., c. 17, § 2, in its pertinence here contains the following definition:

" 'Sale price' means the total amount of the sale - - - - price - - - - of a retail sale including any services that are a part of such sale, valued in money, whether received in money or otherwise, including all receipts, cash, credits, and property of any kind or nature - - - - nor shall 'sale price' include the price received for labor or services used in installing or applying or repairing the property sold, if separately charged or stated - - - - - - "

The Uniform Sales Act, R. S., c. 185, contains this subjoined text:

**"Sec. 18. Property in specific goods passes when parties so intend. —**

"1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"II. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

**"Sec. 19. Rules for ascertaining intention.**—Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

"Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing is done."

- - - - - - - - - - - - - - - - - - - - - - - -

The Uniform Sales Act, R. S., c. 185, § 76, defines "deliverable state;"

"Goods are in a 'deliverable state' within the meaning of this chapter when they are in such a state that the buyer would, under the contract, be bound to take delivery of them."

> " - - - - it is not necessary in order to preclude the presumption of an immediate transfer of the property in the goods that the work to be done by the seller shall be such as to change the character of the goods - - -"
>
> Williston on Sales, Revised Edition, § 265, Vol. 2, P. 17.

> " - - - - If the property has passed, the risk of accidental loss or damage rests upon the buyer. If the property has not passed, the risk still remains with the seller - - - -"
>
> Williston, *supra,* § 273, Vol. 2, P. 38.

This court in *Wallworth's Sons* v. *Daniel E. Cummings Co.* (1937), 135 Me. 267, 269, 194 A. 890, 891, noted:

> "The question whether a sale has been completed and title to the property involved has passed depends on the intention of the parties at the time the contract was made. - - - - - Where such intent is not expressed, as in the instant case, it must be discovered from the surrounding circumstances and from the conduct and the declarations of the parties - - - - -"

The stipulated facts in the instant case relate that there is no delivery of the garment until the alterations have been made by the seller. While the clothing to be altered remains in the seller's possession it is conceded that the risk of loss is borne by the seller. *"The customer has the right to refuse to accept the altered clothing if it is in her opinion not satisfactory; if this occurs any monies paid will be refunded."*

For want of a clear manifestation of an intention that property or title passes to the buyer before alteration of a garment (Williston, *supra,* Vol. 2, § 265, P. 18) the factual concordance of these parties confirms (R. S., c. 185, § 19, Rule 2, *supra*) that the alterations by consensual agreement are accomplished prior to the consummation of the sale of the clothing and constitute *"services that are a part of such*

*sale."* (R. S., c. 17, § 2, *supra.*) The charge for altera-tions must be deemed to be a component of the *"sale price."* The seller's practice of recording such a charge separately in its accounting system is not meaningful under the cir-cumstances of this controversy. Nor are we persuaded that the alterations in contemplation here are within an undis-tended purview of the classification, *"labor or services used in installing or applying or repairing the property sold."* The seller *"guarantees the fit of altered article to the cus-tomer's satisfaction."* It thus appears that the customer bargains for a garment which after alteration will not only fit her or the child but will be *"in her opinion"* satisfactory to the customer.

Our considered resolution of the first stipulated issue of these parties is that the charges for clothing alterations as reported and particularized by the parties must be con-sidered a part of the taxable sales price of the clothing and as services which are a part of a sale.

A Sales and Use Tax became statutory law in this State on May 3, A. D. 1951. P. L., 1951, c. 250. No tax which A. H. Benoit & Company was obligated to collect and trans-mit for alteration charges was assessed by the Bureau of Taxation from May 3, 1951 until the tax here challenged was demanded on September 26, 1963 for alteration charges during the period from September 1, 1961 to June 30, 1963. Benoit & Co. protest that the State has accordingly pre-cluded itself by an imputable waiver or because of charge-able laches from exacting the tax now litigated.

Benoit & Co. argues that the State Bureau of Taxation, as an administrative agency of government, by its inaction through twelve years, by its silence in any regulation rela-tive to "the ambiguous Statutory language, and by its publi-cation in the Information Bulletin of language suggesting non-taxability of the subject matter," "by its delay, coupled with acquiescence through both silence and publication of

non-taxability" has "in effect precluded itself from now making an arbitrary singular retroactive assessment" against Benoit & Co. to the latter's detriment.

The language of R. S., c. 185, § 76 pertinent to the instant case contains no perceptible or indicated ambiguity. No evidence of arbitrariness in the disputed assessment is discernible or demonstrated.

Benoit's in asserting waiver by the State employs the term waiver much as it was recognized in *Houlton Trust Co.* v. *Lumbert,* 136 Me. 184, 186, 5 A. (2nd) 921, 922:

" ' - - - - A waiver may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon. And a person who does some positive act which, according to its natural import, is so inconsistent with the enforcement of the right in his favor as to induce a reasonable belief that such right has been dispensed with will be deemed to have waived it.' "

Benoit & Co. also couches in its defense the element of equitable estoppel:

" - - - - The doctrine of estoppel rests on an act that has misled one who, relying on it, has been put in a position where he will sustain a loss or injury - - - - "

*4 One Box Machine Makers* v. *Wirebounds Co.,* 131 Me. 70, 78, 159 A. 496, 499.

Benoit's plies the defense of laches, an omission to assert a right for an unreasonable and unexplained length of time and under circumstances prejudicial to the adverse party. *Stewart* v. *Grant,* 126 Me. 195, 201, 137 A. 63.

For surmounting considerations of public policy neither the defense of waiver, equitable estoppel nor laches can avail against the State in the instant case:

"There can be no laches, waiver or estoppel imputed to the State."

*In re Moss' Will,* 277 App. Div. 289, 98 N. Y. S. (2nd) 777, 780.

See, also, *People* v. *Minuse,* 190 Misc. 57, 70 N. Y. S. (2nd) 426, 429.

"It seems to be universally recognized that, generally, a State cannot be estopped by the acts and conduct of its officers or agents in the performance of the governmental functions of collecting taxes legally due. The reason for the rule is obvious: no administrative officer is vested with the power to abrogate the statute law of the State, nor to grant an individual an exemption from the general operation of the law - - - - "

*Comptroller of Treasury, Retail Sales Tax Division* v. *Atlas General Industries,* 234 Md. 77, 198 A. (2nd) 86, 90.

" - - - - Collection of a tax is a governmental function in the performance of which a city may not be bound or estopped by unauthorized acts of its officers.

*City of Bayonne* v. *Murphy,* 7 N. J. 298, 81 A. (2nd) 485, 492.

" ' - - - - Beginning with *Wood v. [Missouri] K. & T. Railway Co.,* 11 Kan. 323, 349, there is a long and undeviating line of decisions - - - which holds that laches and estoppel do not operate against the state, that no procrastination of public officials prejudices the state, and that their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide - - - ' "

*State ex rel. Boynton* v. *Wheat Farming Co.,* 137 Kan. 697, 22 P. (2nd) 1093, 1101.

See, Vol. 30, C. J. S., Equity, § 114, P. 526; 1 A. L. R. (2nd) § 5, P. 344.

"Bearing in mind that local, county and State taxes are all included in one tax, it is clear that in this State the town is the State for the purpose of col-

lecting such taxes. In full realization of the fact that few cases can be found bearing squarely on the point, we are nevertheless of the opinion that an equitable estoppel does not lie against a town in the exercise of its taxing power, which necessarily included the power of collecting taxes lawfully assessed. To hold otherwise would, we believe, be contrary to sound public policy and destructive of a fundamental sovereign right."

*Inhabitants of Town of Milo* v. *Milo Water Co.*, 131 Me. 372, 379, 163 A. 163.

See, also, *State* v. *Bean*, 159 Me. 455, 458, 195 A. (2nd) 68.

The subjoined statement of this court in *State* v. *York Utilities Co.*, 142 Me. 40, 44, 45 A. (2nd) 634, 635-636, is very germane here:

"Counsel for the defendant contends, however, that the state tax department for many years assessed the excise tax against the defendant in accordance with the defendant's present interpretation of it and that such interpretation acted on for many years should be controlling on the court. The presiding justice, who wrote an exhaustive opinion on this subject, has a sufficient answer to this claim. He said: 'While in a doubtful case, such a consideration should have weight, and perhaps great weight as a guide to judicial interpretation of a statute it cannot overcome the clear meaning as expressed in the statute itself. Such consideration is at best but a guide to the ascertainment of legislative intent. To make it a hard and fast rule for the construction of statutes would result in transferring the legislative and judicial functions to administrative agencies, a result fostered elsewhere but which as yet has obtained no foothold here in Maine.'

"Both the wording of the statute in question and its relationship to other provisions show clearly what the legislature intended. The effect is not absurd or unreasonable. Neither an administrative agency nor the court has any right to modify its provisions."

In *Claiborne Sales Co.* v. *Collector of Revenue,* 233 La. 1061, 99 So. (2nd) 345, 347, the Louisiana Court states the rule as follows:

> " 'The mere failure of public officers charged with a public duty to enforce statutory and constitutional provisions in respect to the levy and collection of taxes, or the acquiescence of public officers in conditions that exempted certain property from its fair share of the burdens of taxation, should not be permitted to stand in the way of the correct administration of the law, or be construed to estop more diligent and efficient public officers when they attempt to perform their duty by bringing in to the revenue proper subjects of taxation that had theretofore been allowed to escape the payment of taxes.' "

*Henderson* v. *Gill,* 229 N. C. 313, 49 S. E. (2nd) 754, dealt with an affair wherein a tax auditor and collector had given misleading advice and instructions to a retailer who relied thereon and thus became deprived of the opportunity to collect or feasibly recoup sales taxes from purchasers as the law required. The retailer was adjudged by the court to be liable for the tax.

> " - - - - The imposition and collection of taxes are, of course, governmental functions; and the State cannot, by the conduct of its agents be estopped from collecting taxes lawfully imposed and remaining unpaid; and under the law as we understand it neither can their conduct or advice create an estoppel against the State by these retail merchants on the theory of their mere agency since they are the agents of the law, with a fixed liability to account for the tax imposed - - - - "

49 S. E. (2nd) at 756.

The mandate shall be:

> *Appeal denied:*
> *Judgment for the*
> *State Tax Assessor.*