1999 ME 50

**Charles FITZGERALD**

v.

**CITY OF BANGOR.**

Supreme Judicial Court of Maine.

Argued March 3, 1999.

Decided March 30, 1999.

George Z. Singal (orally), James R. Wholly, Gross, Minsky, Mogul & Singal, P.A., Bangor, for plaintiff.

Erik M. Stumpfel (orally), City Solicitor, Bangor, for defendant.

Richard P. Flewelling, Maine Municipal Association, Augusta, for amicus curiae.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Charles Fitzgerald appeals from the judgment of the Superior Court (Penobscot County, *Delahanty, J.*) in favor of the City of Bangor on the City's claim of title to real property through the foreclosure of a tax lien. Fitzgerald asserts that he should have been allowed to assert equitable estoppel as a defense to the City's claim. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1994, Charles Fitzgerald owned, among others, two properties in Bangor. The properties, known as the "Freese's Building" and the "Dakin's Building," were subject to a first mortgage held by Bruce Slovin. Because Fitzgerald had failed to pay property taxes on both buildings for several years, the City had placed tax liens on each property. At issue in this matter are the liens for tax year 1993. Fitzgerald does not dispute the City's process in placing liens on the property.

[¶ 3] The 18–month period of redemption on the 1993 liens was to expire as to both properties on December 7, 1994. To prevent the automatic foreclosure of the liens, Fitzgerald was required to pay $7,996.63 on the Dakin's Building, and $21,102.01 on the Freese's Building by the end of the business day on December 7, 1994. Unbeknown to Fitzgerald, Slovin paid the full amount due on the Dakin's Building midway through the afternoon of December 7, 1994.

[¶ 4] Fitzgerald arrived at the Bangor City Hall late in the afternoon of December 7, 1994 intending to pay the taxes on the Dakin's building. He asked the accounts clerk to tell him the amount that was due on the two buildings. Because a different clerk had waited on Slovin, and because payments made after noon are not posted until the following day, the clerk told him (incorrectly)

that $7,996.63 was still due on the Dakin's Building. Fitzgerald then paid that amount in full. The City accepted his payment on the Dakin's building and, when the double payment was discovered, Fitzgerald's payment was credited to more recent outstanding tax obligations on the Dakin's building. *See* 36 M.R.S.A. § 906 (1990) (requiring a municipality to apply any property tax payment received against outstanding or delinquent taxes due on that property).

[¶ 5] Fitzgerald alleges that he had decided to pay the taxes on the Dakin's building because he had limited resources and because the Dakin's building was occupied by paying tenants, whereas the Freese's building was unoccupied. He was aware that he would lose the Freese's building to the City. He asserts, however, that on December 7 he had enough money to pay the amount due on either the Dakin's Building or the Freese's Building, but not both. Therefore, he argues, had he been given the correct information, he could have used his money to pay the amount due on the Freese's Building.

[¶ 6] Because no payment was made on the Freese's Building on December 7, 1994, Fitzgerald's right to redeem the property expired by statute, and the City's tax lien was deemed to have been foreclosed. *See* 36 M.R.S.A. § 943 (1990 & Supp.1998).[1]

[¶ 7] The present case was commenced when Bruce Slovin brought an action against Fitzgerald and the City of Bangor seeking to foreclose his mortgage on the Freese's Building and requesting the Superior Court to determine the priorities of the parties holding interests in the property. Slovin and Fitzgerald eventually entered into a settlement, and the court denied the City's motion for summary judgment. The City then began administrative proceedings to use its eminent domain power to acquire the Freese's Building.[2] Fitzgerald responded by filing an

---

1. Approximately six weeks later, Fitzgerald attempted to recover the Freese's Building by tendering the total amount owed to the City in back taxes and other charges, but the Bangor City Council declined to allow Fitzgerald to redeem the property.

2. The Bangor City Council approved a resolution initiating the exercise of the City's eminent do-

main power to "complete" its acquisition of the Freese's property. The City Council appears to have decided to institute eminent domain proceedings because efforts to confirm its title to the property through court action had been delayed on the Superior Court calendar, and city plans to convert the building into elderly low-income

action challenging the exercise of eminent domain power by the City, and that action was consolidated with the foreclosure action originally filed by Slovin.

[¶ 8] In preparation for trial, the City filed a motion in limine, asking the court to exclude all evidence proposed to be offered at trial in support of Fitzgerald's claim that, as a result of the incorrect information given to Fitzgerald by the clerk on December 7, the City was equitably estopped from asserting that it had acquired title to the Freese's Building through foreclosure of its tax lien. After a hearing, the Superior Court granted the City's motion, holding that Fitzgerald's estoppel theory "may not be invoked against the City of Bangor in the exercise of its responsibilities involving taxation."

[¶ 9] By agreement, Fitzgerald voluntarily dismissed the remainder of his claims with prejudice, facilitating the appeal of his estoppel claim. The Superior Court, pursuant to Fitzgerald's motion under M.R. Civ. P. 54(b)(1), entered an order certifying as a final judgment its decision to grant the City of Bangor's motion in limine, which effectively foreclosed any defense Fitzgerald may have offered to the City's claim of title and resulted in a judgment for the City. This appeal followed.

## II. DISCUSSION

[¶ 10] Fitzgerald argues that the court erred either in determining that a taxpayer may never assert a defense of equitable estoppel against a municipality exercising its taxation authority, or in determining that the City was, in fact, exercising that authority when its accounts clerk gave Fitzgerald incomplete or inaccurate information.[3] We review the grant of a motion in limine for an abuse of discretion by the trial court. *See Jones v. Route 4 Truck & Auto Repair,* 634 A.2d 1306, 1308 (Me.1993). To have properly exercised its discretion, the Superior Court must have applied the correct law to facts that were not clearly erroneous. *See Hamill*

*v. Liberty,* 1999 ME 32, ¶ 4, 724 A.2d 616. Thus, we must determine whether the court correctly held that the city clerk was acting in the exercise of the City's taxation authority and, if so, whether the court's conclusion that equitable estoppel will not lie against the government in this matter was correct.

### A. The Clerk's Actions

[¶ 11] In its decision addressing Fitzgerald's motion in limine, the court held that "[t]he dispensing of information regarding taxes due and the accepting of tax payments by a collections clerk working for the City of Bangor are two duties that serve to further the City's aim of collecting taxes." We agree. The entire process of collecting taxes, from valuation and assessment of property to the provision of information regarding amounts due and the acceptance of the funds for payment are part of a unitary process intended to assure that the government is carrying out its "paramount function [of taxation] by which it is enabled to exist and function at all." *Maine School Admin. Dist. No. 15 v. Raynolds,* 413 A.2d 523, 533 (Me. 1980). Fitzgerald argues that, by giving him accounting information and taking his money, the clerk was not exercising the City's authority to tax but was simply performing the clerical task of receiving funds on behalf of the City.

[¶ 12] In this context, however, there is no principled basis for recognizing a distinction between the actions of a clerical worker responsible for providing information relative to the collection of taxes and the actions of an administrator or official responsible for making discretionary decisions concerning the government's tax power. The dissemination of information and receipt of funds are actions as integral to the collection of taxes as are the actions that result in the assessment of the taxes.

[¶ 13] The rationale for the rule precluding the assertion of estoppel against

---

housing required the City to obtain marketable title to the property expeditiously.

**3.** The doctrine of equitable estoppel requires proof that the plaintiff relied upon declarations or acts of the defendant and was thereby induced

to do something to his detriment, something which he otherwise would not have done. *See Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 105–06 (Me.1984).

the government in tax cases is to assure that no officer of government has the ability to interfere inadvertently with the government's fundamental sovereign power to tax its citizens. *See A.H. Benoit & Co. v. Johnson*, 160 Me. 201, 207–10, 202 A.2d 1 (1964). This rationale should logically apply to the clerk who supplied Fitzgerald with incorrect information. The foreclosure of a tax lien is a procedure governed by statute, *see* 36 M.R.S.A. § 943 (1990 & Supp.1998), which cannot be rescinded because of the misstatements of a government employee to the taxpayer. *See Flower v. Town of Phippsburg*, 644 A.2d 1031, 1031 (Me.1994). We therefore decline to treat the more clerical aspects of the government's taxation activities as distinct from its other taxation activities for purposes of examining the taxpayer's ability to assert a defense of equitable estoppel against the government.

## B. Application of Equitable Estoppel Against the Government

[¶ 14] The common law prohibition against the assertion of equitable estoppel against the government or its officials has been relaxed in recent decades, and we have held unequivocally that application of equitable estoppel based on the discharge of governmental functions is not completely barred. *See M.S.A.D. No. 15*, 413 A.2d at 533. Nonetheless, the ability of a party to assert an estoppel defense against the government

may be limited depending upon the "totality of the circumstances involved, including the nature of the government official or agency whose actions provide the basis for the claim and *the governmental function being discharged* by that official or agency." *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 861 (Me.1992) (emphasis added).

[¶ 15] When the governmental function at issue is the discharge of responsibilities regarding taxation, we have consistently held that estoppel may never be invoked. *See Town of Freeport v. Ring*, 1999 ME 48, ¶ 13, 727 A.2d 901; *Flower*, 644 A.2d at 1031; *A.H. Benoit & Co.*, 160 Me. at 210, 202 A.2d 1; *Dolloff v. Gardiner*, 148 Me. 176, 186–87, 91 A.2d 320 (1952); *Town of Milo v. Milo Water Co.*, 131 Me. 372, 378–79, 163 A. 163 (1932).[4]

[¶ 16] Notwithstanding the consistent application of the prohibition in past cases, Fitzgerald urges us to relax the rule. Even if we were to consider a relaxation of the rule, however, we would not do so on the facts presented here.[5]

[¶ 17] Equity will not protect a party who has slept on his rights or failed to act with reasonable diligence. *See Searles v. Bar Harbor Banking & Trust Co.*, 128 Me. 34, 40, 145 A. 391 (1929).[6] Fitzgerald simply did not act with the reasonable diligence necessary for us to consider a change in our longstanding rule that the government can-

---

4. We first announced this rule in 1932, holding that estoppel cannot be raised to challenge the collection of taxes lawfully assessed, because to hold otherwise would impair the fundamental sovereign right of a state to assess and collect taxes. *See Town of Milo*, 131 Me. at 378–79, 163 A. 163. In 1964, we expanded on this rationale, noting with approval cases from other jurisdictions holding that an administrative officer charged with the duty of collecting taxes had neither the power to abrogate the state's sovereign power to tax nor the power to grant an exemption to a taxpayer; thus, estoppel could not lie against the municipality for the administrator's actions. *See A.H. Benoit & Co.*, 160 Me. at 207–10, 202 A.2d 1. This rationale was reaffirmed in 1980 and 1994, when we concluded that the government could not be estopped in tax matters because taxation was "the paramount function of government by which it is enabled to exist and function at all." *M.S.A.D. No. 15*, 413 A.2d at 533, *quoted in Flower*, 644 A.2d at 1031.

5. Although many states continue to apply the traditional rule that estoppel does not apply to state or local governments in tax matters, *see, e.g., Westminster–Canterbury of Hampton Roads, Inc. v. City of Virginia Beach*, 238 Va. 493, 385 S.E.2d 561, 566–67 (1989), it appears that the trend among state courts is to relax or abandon the rule. *See, e.g., Valencia Energy Co. v. Arizona Dept. of Revenue*, 191 Ariz. 565, 959 P.2d 1256, 1267 (1998) (en banc); *Illinois Comm'l Men's Ass'n v. State Bd. of Equalization*, 34 Cal.3d 839, 196 Cal.Rptr. 198, 671 P.2d 349, 359 (1983) (citing *United States Fidelity & Guar. Co. v. State Bd. of Equalization*, 47 Cal.2d 384, 303 P.2d 1034 (1956)); *see also* Michael A. Rosenhouse, Annotation, *Estoppel of State or Local Government in Tax Matters*, 21 A.L.R.4th 573 (1983).

6. *See also* 2 JOHN NORTON POMEROY, EQUITY JURISPRUDENCE §§ 418, 419, 419c at 169–72, 175–77 (5th ed.1941).

not be estopped from exercising its power of taxation. Fitzgerald neither claims that he was misled as to the status of the lien on the Freese's building, nor that he made an attempt to pay the taxes on the Freese's building. Rather, he made a calculated decision to allow the City to foreclose the lien on the Freese's building, and chose instead to wait until the very last minute to pay the taxes on the Dakin's building.

[¶ 18] Although Fitzgerald correctly asserts that the law allows him to pay the taxes in the last hour of the final day in the period of redemption, if he chooses to delay until that time, he may do so to his detriment. His eleventh hour decision, even if based on misinformation obtained from the city clerk, is not the solid foundation which we would require before considering the application of the doctrine of equitable estoppel in this context. On these facts, we decline to reexamine the rule that equitable estoppel may not be applied against the government when it is acting to discharge its responsibilities regarding taxation.[7]

[¶ 19] Fitzgerald may not, therefore, invoke equitable estoppel to challenge the City of Bangor's claim of title to the Freese's Building through foreclosure of its tax lien. The Superior Court properly applied the correct law to the facts and did not exceed the bounds of its discretion in granting the City's motion in limine.

The entry is

Judgment affirmed.

---

7. The United States Supreme Court's jurisprudence concerning the invocation of estoppel against the federal government in tax cases appears to be consistent. Indeed, the Court has "come close to saying that the government can never be equitably estopped based on a false or misleading statement of one of its agents no matter how much an individual has relied on that statement to her detriment or how reasonable her reliance." 2 Kenneth Culp Davis & Richard J. Pierce, Jr. Administrative Law Treatise § 13.1 at 229 (3d ed.1994). The rationale for this approach is as follows:

> Estopping the government based on the misrepresentations of its agents would have a series of adverse effects. The most immediate result would be a financial loss of some magnitude to the government. If the government began to lose much money as a result of estoppel cases, agencies would respond by limiting severely the availability of information and advice from government employees. That, in turn, would cause extreme harm to the public for four reasons: (1) All citizens need advice concerning a variety of complicated government programs; (2) most of the advice provided by government employees is accurate and helpful; (3) advice from government employees is free; and (4) advice from alternative sources that may be more reliable is often very expensive.

*Id.* § 13.1 at 230.