STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-147
GAB- YOR-3/9 2004

PETER TUCCI d/b/a
DUS-TROL RENTAL COMPANY,

Plaintiff

v.

**ORDER**

CITY OF BIDDEFORD,

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

APR 23 2004

Before this court is Defendant, City of Biddeford's ("City") Motion for Summary

Judgment and Plaintiff, Peter Tucci d/b/a Dus-Trol Rental Company's ("Tucci") Cross-

Motion for Summary Judgment, pursuant to M. R. Civ. P. 56.

## FACTS

Defendant City began instituting a sewer-user fee in 1991. Prior to the institution

of sewer-user fees in 1991, Defendant City planned a review to determine which

properties were connected to the City sewer system. The requested proposals from

engineering firms to perform the review were too expensive, so Defendant City

performed the inspection in-house.[1]

---

[1] "City employees Paul Gobeil and Willie Pombriant drafted the database determining which properties were connected to the City system. No record of the Gobeil/Pombriant investigation can be found. There are no maps, schematics or other records within the City's control that demonstrate which properties are connected to the City's sewer system." (Stipulations of Fact at ¶¶ 4-10.)

Since 1983, Plaintiff Tucci has rented property located at 24 Pearl Street, in the River Dam Mill Complex,[2] Biddeford, Maine. Plaintiff Tucci operates his business, Dus-Trol Rental Company, from this property. From March 1991 until May 2001, Defendant City sent monthly statements for sewer-user fees directly to Dus-Trol Rental Company. In fact, Plaintiff Tucci paid a total of $12,190.53 to Defendant City in sewer-user fees.

In May of 2001, Defendant City determined that a portion of Plaintiff Tucci's "sewer line that ran from the holding tank through the collapsed building to the pump station was gone." (Stipulations of Fact at ¶ 28.) Accordingly, "the City determined that the Property was not therefore connected to the City's sewer system." Id. at ¶ 30-32.) As a result, in early 2002, Defendant City installed a sewer line from the holding tank to the City's manhole, and then to the pump station in order to connect Plaintiff Tucci.

Based on these events, Plaintiff Tucci filed a Complaint in the York County Superior Court on June 3, 2002. In response, Defendant City filed a Motion for Summary Judgment. On December 29, 2003, Plaintiff Tucci filed an opposition to Defendant City's Motion for Summary Judgment and a Cross-Motion for Summary Judgment, pursuant to M. R. Civ. P. 56.

## DISCUSSION

In a motion for summary judgment, the moving party asserts that no genuine issue of material fact exists and that judgment may be rendered as a matter of law. When reviewing a motion for summary judgment this court must take into account that:

[a] summary judgment is warranted when the statement of material facts

---

[2]  "The City owns a pump station in the Mill Complex. The City owns a force main in the Mill Complex which leads from the pump station to the City's sewer system. All plumbing lines at the Property meet and lead into a holding tank in the Mill Complex." (Stipulations of Fact at ¶¶ 19-21.)

2

and pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law.

Darling's v. Ford Motor Co., 2003 ME 21, ¶ 4, 817 A.2d 877, 879 (citing M. R. Civ. P. 56(c) (h)). In spite of language quoted in older cases, the Law Court has more recently noted that summary judgment is no longer considered an extreme remedy. Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18, 21.

In the present case, Defendant City argues that the sewer-user fees paid by Plaintiff Tucci are valid and not recoverable. In contrast, Plaintiff Tucci asserts that the service charges were not properly assessed thereby warranting a return of the monies paid. Title 30-A § 3406 provides, in relevant part "[t]he municipal officers may establish a schedule of service charges from time to time upon improved real estate connected with a municipal sewer or disposal system for the use of the system." 30-A § 3406 (2003). In addition, the Biddeford Ordinance § 70-32(a) provides:

> [i]t is the purpose of this section to establish proportionate user charges that place the cost of abatement directly on the sources of pollution, conserve potable water, and maintain financial self-sufficiency. It is determined and declared to be necessary and conducive to the protection of the public health, safety, welfare and convenience of the city to collect charges from all users who contribute wastewater to the city's treatment works. The proceeds of such charges so derived will be used for the purpose of operating and maintaining the public wastewater treatment works and providing for future needs.

(Biddeford Ordinance § 70-32(a).) "Each user shall pay for the services provided by the city based on his use of the treatment works as determined by his water consumption according to methods recommended by the environmental specialist." Id. at § 70-32(d)(1).

3

Here, Defendant City has stipulated to the fact that it does not have any records indicating that Plaintiff Tucci was connected to its sewer line, between 1991 and 2001. (Stipulations of Fact at ¶ 35.) Defendant City has also conceded that during this time period it did not treat any wastewater from Plaintiff Tucci's property. Id. at ¶ 33. Despite this, however, Defendant City charged Plaintiff Tucci sewer-user fees. Id. at ¶¶ 15-17. Defendant City also contends that it paid independent contractors to pump wastewater from a holding tank located in the Mill Complex off Pearl Street in Biddeford, between July 11, 2001 and November 12, 2001. (Milligan Aff. at ¶ 2.)[3] Accordingly, Defendant City asserts that "[i]f Dus-Trol was charged for the actual cost of treating its waste water, the total charges would be $37,856.00." Id. at ¶ 4.

The Law Court has held that "[i]n order to support the assessment it is not necessary for the Town to measure precisely the benefit to each piece of property or to calculate exactly how much of the improvement is for the public and how much is for the special benefit of those assessed. Under the statutes quoted above, it need only estimate the benefit." Concerned Taxpayers' v. Scarborough, 576 A.2d 1368, 1370 (Me. 1990) (holding that pursuant to 30-A M.R.S.A. § 3442 the benefits to each piece of property did not have to be precisely calculated, just estimated.) Although this case involves § 3442, this court finds the Law Court's analysis persuasive.

Here, Plaintiff Tucci received the general benefit of municipal services during the period of time in question. In addition, Plaintiff Tucci received waste-water removal.

---

[3]    Plaintiff Tucci contends that the affidavit of Thomas Milligan should be stricken, because Mr. Milligan has never been identified or otherwise designated as a witness and the documents he cites to in his affidavit have never been produced. Plaintiff argues that these are unfair surprises and extremely prejudicial. (See Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion For Summary Judgment at 7.) Defendant City, however, argues that it provided this information to Plaintiff in its interrogatories. (See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion For Summary Judgment at 3-5.) This court finds that admittance of this affidavit is not prejudicial to Plaintiff Tucci, because it had notices of this argument from Defendant City's interrogatory responses. Accordingly, the affidavit will not be stricken from the record.

4

See (Mulligan Aff. at ¶¶ 2-4.) Accordingly, this court finds that Plaintiff Tucci's claim must fail.

Next, Defendant City argues that Plaintiff Tucci has not asserted a valid contract claim. Plaintiff Tucci, however, contends that he is asserting a valid claim for unjust enrichment against Defendant City.

> To sustain a claim for unjust enrichment, a claimant must establish that it conferred a benefit on the other party . . . that the other party had appreciation or knowledge of the benefit . . . and . . . that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. Unjust enrichment, therefore, permits recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay . . . . Trial court determinations on the elements of unjust enrichment are factual issues that will not be set aside as clearly erroneous unless there is no competent evidence in the record to support them.

Forest Assocs. v. Passamaquoddy Tribe, 2000 ME 195, ¶ 14, 760 A.2d 1041, 1045-46 (citations and quotations omitted).

In the present case, Plaintiff Tucci asserts that Defendant City received and appreciated the payments conferred by him. Moreover, because Defendant City has retained these payments Plaintiff Tucci argues that the it has been unjustly enriched. Defendant City, however, asserts that Plaintiff Tucci is not entitled to recovery under an unjust enrichment theory. "That taxation is a function of government and a basic sovereign right there can be no question. In Philadelphia Mortgage and Trust Company v. City of Omaha, 63 Neb. 280, 88 N.W. 523, it was held that the doctrine of estoppel in pais could not be invoked against the city in the collection of taxes lawfully assessed." Inhabitants of the Town of Milo v. Milo Water Company, 131 Me. 372, 378, 163 A. 163, 166 (Me. 1932) (holding "that an equitable estoppel does not lie against a town in the exercise of its taxing power, which necessarily included the power of collecting taxes lawfully assessed.") Hence, because the sewer-user fee was validly

5

assessed this court finds that Plaintiff Tucci's equitable claim against Defendant City must fail.

WHEREFORE, this court **GRANTS** Defendant City's Motion For Summary Judgment and **DENIES** Plaintiff Tucci's Cross-Motion For Summary Judgment, pursuant to M. R. Civ. P. 56.

Dated: March 9, 2004

G. Arthur Brennan
Justice, Superior Court

John A. Turcotte, Esq. – PL
Harry B. Center, II, Esq. DEF

6